UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KUSHAWN S. MILES,

        Plaintiff,                       Case No. 2:21-cv-30

v.                                         Honorable Paul L. Maloney

CONNIE THOMPSON et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    **Factual allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF)

in Kincheloe, Chippewa County, Michigan.  Plaintiff sues Prisoner Counselor Connie Thompson and Assistant Deputy Warden Robert Batho.

Plaintiff alleges that while he was confined at the Chippewa Correctional Facility (URF), he filed a grievance on Defendant Thompson about bringing dogs into the unit because Plaintiff had a severe allergy.  On November 1, 2018, Defendant Thompson called Plaintiff into her office and reviewed the grievance with him.  During the review, Defendant Thompson told Plaintiff that if he did not sign off on the grievance, she would have him moved to the eastside of the prison, which is more restrictive and is used to house mentally ill inmates.  When Plaintiff refused to sign off, Defendant Thompson phoned Defendant Batho and, when she got off the phone, she told Plaintiff to pack up his belongings because Defendant Batho was sick of his grievances.  Defendant Thompson then told Plaintiff that in the future he should be careful about who he chose to write grievances on.

Later, Plaintiff saw Defendant Batho in passing and asked why he was being penalized for complaining about staff bringing dogs into units not designated for them.  Defendant Batho stated that he was in charge of the dog program and that Plaintiff was creating unnecessary problems for staff.  Plaintiff filed a grievance on Defendants Thompson and Batho for retaliation. Plaintiff was moved to the eastside and placed in a housing unit with several mentally ill prisoners. Plaintiff was unable to sleep at night because he was afraid of his cellmates, one of whom was schizophrenic, and both of whom had serious mental health issues.

Plaintiff claims that Defendants violated his First Amendment right to be free from retaliation.  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

2

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Retaliation**

Plaintiff claims that he was moved to the eastside of URF in retaliation for his grievance on Defendant Thompson. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Ordinarily, transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the court held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. The *Hill* court determined that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. In *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009), the Sixth Circuit held that a threat to have a prisoner moved out of the unit so that he would lose his job, together with a threat to influence the warden to have the prisoner transferred to another institution far from his family were sufficiently adverse to be actionable. *Id.* at 985. The court recognized that a threat is actionable if it otherwise meets the standard that it would

4

deter a person of ordinary firmness from engaging in a protected activity. *Id.* (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003).

Plaintiff attaches the step I grievance response to URF-18-11-3186-17B to his complaint. The response summarizes Plaintiff's complaint as follows:

> Grievant alleges he was moved from the West Side to the East Side in retaliation for filing a grievance concerning the inhumane conditions he was exposed to that are a substantial risk to his health. He claims RUM Batho and PC C. Thompson are the staff who retaliated against him.

(ECF No. 1-4, PageID.25.) The investigation is summarized:

> Acting Assistant Deputy Warden Batho and Prison Counselor C. Thompson report prisoner Miles claims to have extreme dog allergies and is constantly being exposed to dog dander on the West Side. Prisoner Miles requested a transfer from URF and he was placed on the East Side where dogs are not generally allowed. Prisoner Counselor Salomon interviewed and denies the grievant's claim. She reports telling the prisoner he was moved because of his severe dog allergy claims. URF East Side Health Care indicate the prisoner has no record of extreme dog allergies. This respondent asked Health Care if there would be any problems in returning the prisoner to the West Side if he was placed in a housing unit without dogs and Health Care indicate that the prisoner would be absolutely fine and safe.

(*Id.*) The decision summary concludes that Plaintiff was moved because of his claim of having a severe dog allergy. The respondent noted that Plaintiff did not have a documented dog allergy and could be safely moved to a housing unit without dogs. Finally, the respondent noted that Plaintiff was on the list to be returned to the West Side to a dog free unit. (*Id.*)

Plaintiff also attaches a copy of the step II grievance response:

> The Step I Respondent interviewed Health Care regarding the matter and found [Plaintiff] does have allergies but no specific allergy to dogs is confirmed, the description is only generalized. This prisoner will be moved to the East Side Level II where dogs are not present. No violation of policy exists.
>
> This Step II Respondent find the prisoner has been moved to the East Side Level II. The prisoner still complains of going to the West Side for programming and is more restricted on the East Side. It was found the prisoner could have remained in his H-Unit housing on the West Side as no dogs are housed in that unit and staff were instructed not to allow dogs to visit that unit. It is also found there [are] no dogs or dog handlers present with the grievant in his programming classes. URF

5

>was recently nspected for an Annual Sanitation Inspection.  Sanitation, ventilation and other conditions of the facility were all inspected and meet State guidelines.  After consulting with Health Services, there is no documented allergy to dogs or dog dander in this prisoner file.  This prisoner is properly housed on either URF's East or West Side as a Level II prisoner.

(ECF No. 1-4, PageID.23.)

Based on a review of the attachments to Plaintiff's complaint, it appears that he was moved from one level II unit to another because of his complaint that he suffered from a severe dog allergy.  Plaintiff's transfer was from one level II unit to another level II unit within the same facility.  Transfers from one general population to another are not typically an adverse action.  *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398.

Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer; he only alleges that the East Side was more restrictive and that it housed more mentally ill prisoners.  Plaintiff claims that he unable to sleep at night because he was afraid of his cellmates, one of whom was schizophrenic, and both of whom had serious mental health issues.

The Sixth Circuit has held that placement with a mentally ill cellmate can be adverse when that cellmate is aggressive and makes specific threats of violence.  *LaFountain v. Harry,* 716 F.3d 944, 949 (6th Cir. 2013).  In *LaFountain*, the plaintiff's cellmate stated that "he wouldn't fight but would go and get either of two knives he had hidden in the prison yard in order to use on [the plaintiff]."  *Id.*  Plaintiff's allegations regarding his cellmates in this case are entirely conclusory.  Plaintiff fails to allege that his cellmates were aggressive toward him or that they threatened to harm him.  In addition, Plaintiff does not deny that while on the East Side, he was no longer exposed to dogs in his housing unit.  In fact, Plaintiff complains that he continued to suffer from his dog allergy when he went to the West Side for programming.  Therefore, his

6

transfer to the East Side appears to have been largely beneficial to his health. Accordingly, the Court concludes that Plaintiff's transfer to the East Side does not appear to be sufficiently adverse to support a First Amendment retaliation claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  March 31, 2021                              /s/ Paul L. Maloney
                                                                                              Paul L. Maloney
                                                                                              United States District Judge